UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| ALICE HARDERS BERNARD | * | CIVIL ACTION NO.  07-1080 |
| VERSUS | * | |
| MICHAEL J. ASTRUE,<br>COMMISSIONER, SOCIAL<br>SECURITY ADMINISTRATION | * | MAGISTRATE JUDGE HAYES |

## MEMORANDUM RULING

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  Pursuant to 28 U.S.C. § 636(c)(1) and with the consent of all parties, the district court referred the above-captioned matter to the undersigned magistrate judge for the administration of proceedings and entry of judgment.  For reasons assigned below, the decision of the Commissioner is **AFFIRMED**, and the matter **DISMISSED** with prejudice.

### Background & Procedural History

Alice Bernard filed the instant application for disability insurance benefits on April 8, 2004.  (Tr. 41-43).  She alleged disability since March 12, 2004, due to removal of spinal cord tumor, stenosis, and severe arthritis.  (Tr. 41, 51). The claim was denied at the initial stage of the administrative process.  (Tr. 32-36).  Thereafter, Bernard requested and received a December 7, 2005, hearing before an Administrative Law Judge ("ALJ").  (Tr. 274-281).  However, in a June 16, 2006, written decision, the ALJ determined that Bernard was not disabled under the Act, finding at Step Four of the sequential evaluation process that she was able to return to past relevant work as an accountant.  (Tr. 14-23).  Bernard appealed the adverse decision to the Appeals Council.  On April 20, 2007, the Appeals Council denied Bernard's request for review;

thus the ALJ's decision became the final decision of the Commissioner. (Tr. 5-7).

On June 22, 2007, Bernard sought review before this court.  She alleges the following

errors:

> (1)     the ALJ failed to follow relevant legal standards in evaluating the evidence of
>         plaintiff's treating physician; and

> (2)     the ALJ's residual functional capacity determination is not supported by
>         substantial evidence.

### Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the

ALJ's determination, and (2) whether the decision comports with relevant legal standards.  *Villa*

*v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Where the Commissioner's decision is

supported by substantial evidence, the findings therein are conclusive and must be affirmed.

*Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's decision is not supported

by substantial evidence when the decision is reached by applying the improper legal standards.

*Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).  Substantial evidence is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v.*

*Perales*, 402 U.S. at 401. While substantial evidence lies somewhere between a scintilla and a

preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789

(5th Cir. 1991).  Conversely, a finding of no substantial evidence is proper when no credible

medical findings or evidence support the ALJ's determination.  *Johnson v. Bowen*, 864 F.2d 340,

343-44 (5th Cir. 1988).  The reviewing court may not reweigh the evidence, try the issues *de*

*novo*, or substitute its judgment for that of the Secretary.  *Greenspan v. Shalala*, 38 F.3d 232,

(5th Cir. 1994).

**Determination of Disability**

Pursuant to the Social Security Act (the "Act"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability.  *See* 42 U.S.C. § 423(a)(1)(D).  The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).   Based on a claimant's age, education, and work experience, the Act utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.  *See* 42 U.S.C. § 423(d)(2)(A).  Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the Act.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

(1)      An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2)      An individual who does not have a "severe impairment" of the requisite duration will not be found to be disabled.

(3)      An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4)      If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

>  (5)     If an individual is unable to perform past relevant work, then other factors
>          including age, education, past work experience, and residual functional
>          capacity must be considered to determine whether the individual can make
>          an adjustment to other work in the economy.

*See, Boyd v. Apfel*,  239 F.3d 698, 704 -705 (5th Cir. 2001);  20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).  When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated.  *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

The ALJ found at Step Two of the sequential evaluation process that Bernard suffers from severe impairments of status post cervical laminectomy for tumor excision, fibromyalgia, and degenerative joint disease in the hands and feet.  (Tr. 19).  However, the ALJ concluded that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process.  *Id*.

The ALJ next determined that Bernard retained the residual functional capacity for light work, reduced by the ability to climb only occasionally.[1]  Plaintiff contends that the ALJ failed to

---

[1]   Light work entails:
>  . . . lifting no more than 20 pounds at a time with frequent lifting or
>  carrying of objects weighing up to 10 pounds.  Even though the
>  weight lifted may be very little, a job is in this category when it
>  requires a good deal of walking or standing, or when it involves
>  sitting most of the time with some pushing and pulling of arm or
>  leg controls.  To be considered capable of performing a full or wide

follow relevant legal standards when evaluating the evidence of her treating physician, Anil

Nanda, M.D.  Plaintiff emphasizes a February 24, 2004, office note wherein Dr. Nanda observed

that Bernard underwent a decompressive cervical laminectomy and resection of a spinal cord

tumor in 2002.  (Tr. 101).  He noted that she now complained of additional back pain going

down her right leg, with no numbness or tingling.  *Id*.  On neurological examination, her cranial

nerves were normal.  *Id*.  She exhibited marked myelopathy in both upper and lower extremities,

with brisk reflexes.  *Id*.  Review of her films showed *moderate* stenosis from L3 to L5.  *Id*.

Nanda felt that Bernard was disabled and unable to continue gainful employment.  *Id*.  He opined

that she had *marked* disability with ambulation and that her residual myelopathy was not likely to

improve.  *Id*.  She further suffered marked stenosis; thus he felt that she should be placed on

"total disability."  *Id*.

        The Fifth Circuit has held that

> "ordinarily the opinions, diagnoses, and medical evidence of a
> treating physician who is familiar with the claimant's injuries,
> treatments, and responses should be accorded considerable weight
> in determining disability." *Scott v. Heckler*, 770 F.2d 482, 485 (5th
> Cir.1985). The treating physician's opinions, however, are far from
> conclusive. "[T]he ALJ has the sole responsibility for determining
> the claimant's disability status." *Moore v. Sullivan*, 919 F.2d 901,

---

> range of light work, you must have the ability to do substantially
> all of these activities.  If someone can do light work, we determine
> that he or she can also do sedentary work, unless there are
> additional limiting factors such as loss of fine dexterity or inability
> to sit for long periods of time.

20 C.F.R. § 404.1567(b).

       In his findings, the ALJ stated that plaintiff retained the capacity for medium work.  (Tr. 19).  However, he described the lifting requirements for light work.  *Id*.  Moreover, in the body of the decision, the ALJ stated that although the medical expert found her capable of medium work, he was limiting her to light work.  (Tr. 20).  It is manifest that the ALJ intended a residual functional capacity for light work.  Procedural perfection in administrative proceedings is not required.  *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

905 (5th Cir.1990).

> Accordingly, when good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony. The good cause exceptions we have recognized include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence. *Scott*, 770 F.2d at 485. In sum, the ALJ "is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly." Id.; see also 20 C.F.R. § 404.1527(c)(2) ("If any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all the other evidence and see whether we can decide whether you are disabled based on the evidence we have.").

*Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).

The ALJ identified several reasons for declining to credit Dr. Nanda's letter.  First, he observed that an opinion on issues reserved to the Commissioner is not given any special significance.  (Tr. 21-22).  Indeed, a physician's statement that a claimant is "disabled" or "unable to work" is not a medical opinion, and is afforded no special significance under the regulations. 20 C.F.R. § 404.1527(e); *see also, Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

The ALJ further noted that although Dr. Nanda stated that the MRI showed evidence of *moderate* stenosis, he then found that she was disabled due to *marked* stenosis.  (Tr. 20).  The ALJ also remarked upon the seeming inconsistency between Nanda's observation that Bernard suffered "marked disability with ambulating," even though she experienced no numbness or tingling in the lower extremities.  *Id*.  To place Dr. Nanda's February 24, 2004, observations and recommendations in perspective, the ALJ recited Nanda's October 22, 2003, office note wherein Nanda indicated that Bernard suffered from numbness and had difficulty ambulating.  (Tr. 104). At that time, Nanda felt that Bernard was disabled.  *Id*.  Nonetheless, Bernard was able to continue working until March 12, 2004.  (*See*, Tr. 51).

The ALJ contrasted Dr. Nanda's findings with the other medical sources.  For instance, March 10, 2004, records from plaintiff's treating physician, Larry Broadwell, M.D., indicate that Bernard suffered from fibromyalgia, osteoporosis, and degenerative disc disease of the hand and cervical spine.  (Tr. 135-136).  Broadwell indicated that she experienced hand and lower back pain about two days per month.  *Id*.  There was no joint swelling or tenderness.  *Id*.  Her range of motion in all joints was normal.  *Id*.  There was no indication that Bernard suffered any ambulatory difficulties.  *Id*.[2]

On June 22, 2004, Edwin C. Simonton, Jr., M.D., examined Bernard at the request of Disability Determination Services.  (Tr. 153-154).  The report stated that plaintiff experienced residual left-side numbness after her 2002 surgery.  *Id*.  In March 2004, she developed pain while writing.  *Id*.  She represented that if her hand slipped from the keyboard, she had to take her other hand to put it back in place.  *Id*.  She exhibited a full range of motion in her right shoulder, bilateral elbows, wrists, and hands.  *Id*.  She had full range of motion in her left shoulder except for abduction which was reduced to 110 degrees.  *Id*.  There was no impairment of dexterity or grasping ability.  *Id*.  Sensation to touch was diminished over the entire left upper extremity.  *Id*.  Her sensation was diminished in her left foot.  *Id*.  Sensation was otherwise normal and equal in the lower extremities.  *Id*.  Her stance was normal; her gait was normal without limp or need for

---

[2]  An April 27, 2004, physical therapy progress report indicated that plaintiff's range of motion was 17 percent below normal.  (Tr. 162).  However, the report did not mention that Bernard suffered walking difficulties, let alone a "marked" walking deficiency.  *Id*.

Broadwell's notes from February 16, 2005, reveal that plaintiff had cervical surgery scheduled for March 10, 2005.  (Tr. 236).  She experienced elbow and hand pain about three to four times per month.  *Id*.  She had morning stiffness for about 15 minutes.  *Id*.  She had several tender points.  *Id*.  Her range of motion was normal.  *Id*.

Dr. Broadwell's September 20, 2005, notes indicated only mild swelling and tenderness in her hands.  (Tr. 215).  Her paresthias remained unchanged.  *Id*.  She had mild morning stiffness.  *Id*.

assistive devices.  *Id*.  She was able to walk on heels and toes.  *Id*.  She "hopped" up at the end of

the examination, "hopped into her automobile and drove away."  *Id*.  He believed that her actions

belied her statements, and that she was capable of returning to gainful employment.  *Id*.

In light of the conflicting findings between Drs. Nanda and Simonton, the ALJ sent

interrogatories to agency medical consultant, Adu Ebrahim, M.D., on January 26, 2006.  (Tr.

263-267).[3]  Ebrahim stated that plaintiff suffers from post-surgical cervical laminectomy, tumor

excised; fibromyalgia; and degenerative disc disease of the hands and feet.  *Id*.  Ebrahim

completed a medical source statement of ability to do work-related activities (physical) wherein

he indicated that plaintiff could occasionally lift and carry 50 pounds, and frequently lift or carry

20 pounds.  (Tr. 268-271).  *Id*.  He further indicated that her ability to stand, walk, sit, push, or

pull were not affected.  *Id*.  She was limited to occasional climbing.  *Id*.[4]

Plaintiff contends that the ALJ erred in failing to specifically find that Dr. Simonton's

opinion was better supported than Dr. Nanda's opinion.  Plaintiff further suggests that the ALJ

should have considered the relevant factors set forth in 20 C.F.R. § 404.1527 in weighing Dr.

Nanda and Dr. Simonton's findings.  *See*, *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000).

However, an ALJ need not consider each of the § 404.1527(d) factors when, as here "there is

competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's

---

[3]  Ebhrahim specializes in internal medicine.  (Tr. 272).

[4]  Non-examining agency physician, Blaine Pittman, M.D., completed a physical residual
functional capacity assessment on July 13, 2004.  (Tr. 173-180).  He noted that Bernard could
occasionally lift 50 pounds and frequently lift 25 pounds.  *Id*.  She also could stand, walk, and sit
for about six hours in an eight hour day.  *Id*.  No other limitations were indicated.  *Id*.  Of course,
"[a]n ALJ may properly rely on a non-examining physician's assessment when ... those findings
are based upon a careful evaluation of the medical evidence and do not contradict those of the
examining physician." *Carrier v. Sullivan*, 944 F.2d 243, 246 (5th Cir.1991)(quoting, *Villa v.
Sullivan,* 895 F.2d 1019,1024 (5th Cir. 1990)).

opinion is more well-founded than another." *Ward v. Barnhart*, 192 Fed. Appx. 305, 308, 2006

WL 2167675 (5ᵗʰ Cir. 08/02/2006) (unpubl.) (quoting *Walker v. Barnhart*, 158 Fed. Appx. 534

(5th Cir. 12/9/2005); *see also*, *Bullock v. Astrue*, 2007 WL 4180549 (5ᵗʰ Cir. 11/27/2007)

(unpubl.).[5]  As in *Ward*, the instant ALJ discussed the competing, first- (and second) hand

evidence that conflicted with Dr. Nanda's opinion. *Ward, supra*.  The ALJ's decision to place

little weight or to "effectively [reject]" the limitation(s) recognized by Dr. Nanda is supported by

substantial evidence.  *Id*.; *see also, Nugent v. Astrue*, 2008 WL 2073891 (5ᵗʰ Cir. May 16, 2008)

(ALJ entitled to discount treating physician's conclusory statement because it contradicted earlier

treatment notes, objective medical findings, and other examining physicians' opinions).

Plaintiff further contends that the ALJ failed to fully and fairly develop the record by not

re-contacting Dr. Nanda to clarify some of the inconsistencies in his office note and to see

whether there was any basis for Bernard's self-professed reaching, handling, and fingering

limitations.  The regulations provide that the Commissioner will seek additional evidence or

clarification from a treating source when:  1) the report from the source contains a conflict or

ambiguity that needs to be resolved; 2) the report does not contain all of the necessary

information; or 3) the report does not appear to be based on medically acceptable clinical and

laboratory diagnostic techniques.  20 C.F.R. § 404.1512(e).  The instant ALJ's reasons for

discounting Dr. Nanda's opinion arguably required him to re-contact the physician.  *See, Hyde v.*

---

[5]  Plaintiff cites *Beasley v. Barnhart*, to support his argument that the ALJ was required to consider all of the § 404.1527(d)(2) factors before rejecting a treating source opinion. *Beasley v. Barhart*, 191 Fed. Appx. 331 (5ᵗʰ Cir. Jul. 25, 2006).  However, in *Beasley*, there was no countervailing medical evidence from a treating or examining source that supported the ALJ's residual functional capacity determination.  *Id*.

*Astrue*, Docket No. 07-30748 (5th Cir. May 12, 2008) (unpubl.).[6]  However, an ALJ's failure to

adequately develop the record does not automatically compel reversal.  *Id*. (citing *Kane v.*

*Heckler*, 731 F.2d 1216 (5th Cir. 1984)).  To obtain reversal due to the ALJ's failure to

adequately develop the record, the claimant must also demonstrate resulting prejudice.  *Brock v.*

*Chater*, 84 F.3d 726 (5th Cir. 1996).  "To establish prejudice, a claimant must show that [she]

could and would have adduced evidence that might have altered the result."  *Id.*  (Internal quotes

omitted).  Here, Bernard argues that there is no way to know from the record what Dr. Nanda

would have said had he been re-contacted.  (Pl. Brief, pg. 9).  Yet, something more is required

than mere speculation that the additional evidence might have made a difference (e.g., a

supporting statement from the doctor).  *Hyde, supra*.  Accordingly, plaintiff has not demonstrated

that she was prejudiced by the ALJ's failure to re-contact Dr. Nanda.

Finally, plaintiff argues that the ALJ's residual functional capacity is not supported by

substantial evidence because it failed to incorporate her reaching, handling, and fingering

difficulties.  However, despite observing that Bernard suffered diminished sensation to her left

upper extremity, Dr. Simonton found that she suffered no impairment of dexterity or grasping

ability.  (Tr. 153-154).  The non-examining agency physicians likewise did not assign any

reaching, handling, or fingering limitations.  (Tr. 173-180, 268-271).  Moreover, Dr. Broadwell's

notes indicate that plaintiff had a normal range of motion in all joints, and that she experienced

pain only twice per month.  (Tr. 135-136).  Although, plaintiff alleges that she cannot feel the

keys on the computer, this did not prevent her from spending two hours per day on the computer.

---

[6] The Commissioner argues that the ALJ was not required to recontact Nanda because
the ALJ had sufficient evidence to make a determination.  However, the duty to recontact is not
contingent upon the adequacy of the record; rather, it depends upon the adequacy of the treating
physician's report.  *Hyde, supra*.

(Tr. 72).[7]

In sum, the undersigned finds that the ALJ's residual functional capacity determination is supported by substantial evidence.  The undersigned further finds that the Commissioner's decision as a whole is supported by substantial evidence and is free of legal error.[8] Accordingly,

The Commissioner's decision is **AFFIRMED**, and the matter **DISMISSED** with prejudice.

THUS DONE AND SIGNED, in Monroe, Louisiana, on the 23rd day of June, 2008.


KAREN L. HAYES
U. S. MAGISTRATE JUDGE

---

[7]  At the hearing, plaintiff complained of hand swelling and pain.  (Tr. 276-277). However, Dr. Broadwell indicated that plaintiff's swelling and tenderness was no more than mild.  (Tr. 215).

[8]  Plaintiff did not allege any errors with the remaining steps of the sequential evaluation process.